DEBORAH SMITH
Acting United States Attorney

AUDREY J. RENSCHEN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
(907) 271-5071

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. |
| | ) | 3:06-cr-00007-RRB-JDR |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLEA AGREEMENT** |
| | ) | |
| WILLIAM JOSEPH EATON , | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.      **Introduction**

A.      *Summary*

This brief introduction sets forth a summary of the terms of the plea

agreement between the defendant and the United States.  This summary is not

intended to supercede the language that follows this subsection. It merely sets forth a summary for the benefit of the court.

The defendant agrees to plead guilty to Counts 1 through 4, of the Indictment filed in this case, which charges him with two counts of Receipt of Child Pornography (Counts 1&2), in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), one count of Possession of Child Pornography (Count 3), in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and Criminal Forfeiture (Count 4), in violation of 18 U.S.C. § 2253(a)(3). In exchange for the defendant's pleas, the United States agrees not to file any additional charges based on the current investigation, not to file any motions for upward departures, and to recommend an adjustment for acceptance of responsibility.

B.     This document contains the complete plea agreement between the United States and the defendant, WILLIAM JOSEPH EATON . No other agreement, understanding, promise, or condition exists between these two parties. The defendant understands this agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.

C.     The parties expressly agree that this plea agreement is entered into and is to be controlled by Federal Rule of Criminal Procedure 11(c)(1)(B). This

means that the defendant **may not withdraw** from this agreement if the Court deviates from the sentencing recommendations made by the United States or by defense counsel. Neither the defendant nor the court is bound by the government's sentencing estimates. This agreement will also be governed by Fed. R. Crim. P. 11(c)(1)(C) only if the conditions as set forth in Paragraph II. C. 7 below occur.

      D.    Because this case arises out of conduct occurring after November 1, 1987, the Court will be guided by application of the United States Sentencing Commission Guidelines (U.S.S.G.). However, the sentence calculated by application of the U.S.S.G. is not mandatory, but advisory.

      E.    Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney's fees and costs from the other party.

II.   **What the defendant agrees to do**

      The defendant agrees the following obligations are material to this agreement. The defendant agrees that any violation of or failure to fulfill these obligations will be a material breach of this agreement. If the defendant breaches this agreement, the defendant understands the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against the

defendant on any charges arising out of the investigation in this matter. Whether the defendant has violated the terms of this agreement will be determined by the court at an appropriate hearing during which any of the defendant's disclosures will be admissible and the government's burden is by a preponderance of the evidence.

A.    *Charges*

The defendant is currently charged with Counts 1 through 4, by the Indictment filed in this case, which alleges two counts of Receipt of Child Pornography (Counts 1&2), in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), one count of Possession of Child Pornography (Count 3), in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and Criminal Forfeiture (Count 4), in violation of 18 U.S.C. § 2253(a)(3). Pursuant to this written agreement, the defendant agrees to plead guilty to all of those counts.

B.    *Limits on Departures*

Unless specifically set forth in this plea agreement, the defendant agrees he will not seek any downward departures under the U.S.S.G. or any other authority. This section does not prohibit the defendant from arguing for the application of

any downward guideline adjustments to the court's sentence calculation.  Nor does it prohibit arguments under 18 U.S.C. 3533(a).

C.    *Cooperation*

1.    The defendant agrees to cooperate in all federal, state and local investigations and prosecutions as requested of him.  The defendant understands and agrees a government motion for a substantial assistance departure is not a reward for cooperating with the United States.  Federal law enforcement officers or an authorized representative of the United States Attorney's office have, and may conduct additional debriefings of the defendant pursuant to this agreement.  The defendant must fully and truthfully disclose all information concerning all individuals associated with the subject being inquired about, including any statements such individuals made to the defendant concerning their activities and associations.  The defendant will not be permitted to refuse to answer any questions asked of him.

2.    The defendant agrees he must provide truthful and complete information at all times.  During any debriefing, the defendant agrees to totally disclose all relevant information even if a question specifically seeking such information is not asked.  The United States will consider it materially misleading

and will consider it unsatisfactory if the defendant simply answers all questions truthfully but fails to disclose relevant information because, in his belief, no one asked precisely the right question. The defendant also agrees to turn over to the United States any documents in his possession or under his control that are relevant to the inquiries of law enforcement. The defendant understands and agrees that if he provides false or incomplete information or testimony during any judicial proceeding, including grand jury, he will have materially breached this agreement. The defendant is aware he subjects himself to prosecution for perjury, giving false statements, or obstruction of justice if he provides false or misleading information or testimony at any time, and he agrees his statements can and will be used against him during any prosecution for these other offenses.

3.    The defendant understands that if he falsely implicates an innocent person in the commission of a crime, or exaggerates the involvement of any person in the commission of a crime in order to appear cooperative, or if the defendant falsely minimizes the involvement of any person in the commission of a crime in order to protect that person, then the defendant will be in violation of the plea agreement. It will also be a material breach of the defendant's obligation to cooperate if he informs, directly or indirectly, any person that they are a target of a

government investigation. While this agreement is in effect, it will be a material breach, if the defendant violates any local, state, or federal law.

4.    The defendant agrees that his obligations under this agreement will continue on beyond the time that the court imposes the sentence. The defendant has a continuing obligation, if called upon, to testify truthfully before either a grand jury or a trial jury in one or more trials. A failure or refusal to do so will be a material breach of this agreement and the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against the defendant on any charges arising out of the investigation in this matter, including any charges the government has agreed to dismiss.

5.    The defendant understands there is a possibility that despite his agreement to cooperate, the United States may not file a motion for a substantial assistance departure on the defendant's behalf. If, in good faith, the United States determines the defendant has complied with the terms of this plea agreement and has met the government's criteria for a substantial assistance departure motion, the United States will move for such a departure. The defendant understands the decision to file a motion for a substantial assistance departure lies solely within the prosecutorial discretion of the United States. Even if the United States or law

Page 7 of 35

enforcement officers debrief the defendant and even if the defendant testifies in behalf of the United States at any court proceeding, the defendant understands the United States may not file any motion for a downward departure if the United States, in the exercise of its prosecutorial discretion, determines the defendant has not provided substantial assistance. If the United States does not move for a substantial assistance departure, the defendant agrees he will not be permitted to withdraw his plea of guilty. The defendant also understands that he cannot challenge the government's decision to decline filing a motion for a substantial assistance downward departure, unless he can show that the government's decision was based on an unconstitutional motive or was done in bad faith. Accordingly, the defendant acknowledges the United States has not guaranteed the defendant a motion for a substantial assistance downward departure pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35 nor has it guaranteed the court would grant such a motion if the United States moved for a substantial assistance departure.

      6.    In deciding if it should file a motion for a substantial assistance departure for the defendant, the United States will assess whether or not the defendant has met the requirements of U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), and

Fed. R. Crim. P. 35(b). Substantial assistance consists of providing truthful, complete, and useful information which was previously unknown to the government and is both significant and admissible in court in aid of the prosecution of other persons who have committed offenses against the United States and are charged, whether or not such testimony ultimately becomes necessary as dictated by the course of action chosen by those charged based in whole or in part on the information provided by the defendant. Substantial assistance does not encompass providing information already known to the United States or providing information of minimal probative value, or which is uncorroborated, or otherwise inadmissible in court. It also does not encompass providing information upon which the United States Attorney for the District of Alaska cannot act or does not have the resources upon which to act.

   If the defendant provides truthful, complete, and useful information regarding incidents or persons outside the jurisdiction of the United States District Court for the District of Alaska, the United States will make a good faith effort to inform the United States Attorney or federal law enforcement agencies in the other district about the defendant's information. If the defendant provides substantial assistance to the other United States Attorney's office, it will be left to

the discretion of the other United States Attorney's office to move for a

substantial assistance departure in the defendant's behalf. The defendant agrees

the United States Attorney's office for the District of Alaska is not obligated to

move for a substantial assistance departure for assistance provided to other United

States Attorney's offices.

       7.    The defendant further agrees that if the United States moves

for a substantial assistance departure, the court, pursuant to Fed. R. Crim. P.

11(c)(1)(C), will not depart to a sentence less than five years. If the court

indicates it intends to impose a sentence less than five years, the United States will

have the absolute right to withdraw from this agreement. The defendant

understands that if the United States moves for a substantial assistance departure

under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35(b), the

United States has not promised to make any particular sentence departure

recommendation to the court in his behalf. The defendant further agrees the

United States may, in its discretion, restrict the motion for a substantial assistance

departure to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35(b). The defendant also

agrees that under no circumstances, if the United States files and the court grants a

motion for a substantial assistance departure motion, will he request that the court grant him a departure sentence less than 5 years.

8.    The defendant understands that even if the United States moves for a substantial assistance departure, the court is not bound to grant the motion. The defendant understands and agrees that, if the United States moves for a substantial assistance downward departure, he will not be permitted to withdraw his plea if the court finds that a downward departure is not appropriate or does not follow the departure recommendations made by either the government or the defendant.

9.    On the express condition that the defendant fully cooperates with all state and federal investigations and does not breach this plea agreement, and does not provide false or misleading information or testimony, the United States agrees that any statements or information the defendant has provided pursuant to this section will not be directly used against the defendant in any federal criminal proceeding, and will not be used contrary to the policy set forth in U.S.S.G. § 1B1.8.

10.    The defendant understands this agreement does not confer any immunity on him for making false statements to the government or giving

Page 11 of 35

untruthful testimony under oath at any judicial proceeding. This agreement does not provide use immunity to the defendant in a prosecution for any future acts.

### D.    *Waivers of appellate and collateral attack rights*

The defendant understands that by pleading guilty he waives his right to appeal his conviction. The defendant also understands and agrees that as consideration for the government's commitments under this plea agreement, and if the court accepts this plea agreement and imposes a sentence no greater than the statutory maximums available for these offenses, including any forfeiture under this plea agreement, he will knowingly and voluntarily waive his right, contained in 18 U.S.C. § 3742, to appeal the sentence imposed – including any forfeiture or conditions of supervised release.

Furthermore, the defendant also knowingly and voluntarily agrees to waive his right to collaterally attack his conviction and/or sentence --including forfeiture and supervised release conditions. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to his conviction or sentence alleging ineffective assistance of counsel -- based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by him by the time the court imposes sentence; and 2) a challenge to the voluntariness of his guilty plea. The defendant agrees that if his guilty plea is

rejected, withdrawn, vacated, reversed, or set aside, or if his sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case for which there is probable cause.

E.   *Consequences of the defendant's guilty plea*

The defendant understands the special assessments owed in this case ($300) will be due on the day the court imposes sentence. The defendant understands that he will lose his right to own or possess any firearms, his right to vote, and his right to sit on a jury.

F.   *Forfeiture*

The defendant hereby represents that he is the sole owner of all legal right, title, and interest in the following property, and that he agrees to abandon any and all interest in, and voluntarily forfeit the following property, used to facilitate child exploitation crimes:

1)   the property indicted in Count 4 of the Indictment, Antec Midtower Silver-Cased Computer with DVD and CDR R/W drives, Labeled with Windows XP Product Key: HC3VC-28YDG-RRBRX-4BJJJ-DCDJG;

2)   One Samsung 42' Plasma television, Model number: M-4235, Serial number: 650131HWB0128IK;

3)   One Dell XPS Gen 5 silver and black in color computer tower, SN# 7Y1CS71;

4)    Sony Notebook computer with Serial #28132530 310532 and Model #PCG-481L;

5)    One Compaq Presario Computer, Desktop, Black and Grey, Model Number DM171A, Serial Number CNC3390Q3R, and associated power cord;

6)    One Compaq computer, black, laptop, model 1200-XL111, Serial Number: 1V03DCH7E4NY and associate power cord;

7)    One black ATCS Cooler Master cased computer with two flip down panels on front containing DVD-ROM, CD/RW drive, USB/Firewire Inputs, and internal storage;

8)    One western digital hardrive, black and silver, Model: WD800JB-00CRA1, Serial Number: WMA8E3719816;

9)    One Seagate Brand Hardrive, Model ST 380021A, Black and Silver, Serial number 3HV07PEY;

10)   One (1) Maxtor Diamond Max Plus 9 250GB ATA/133 Hard Drive, S/N Y62YVG5E encased in one (1) black and silver "Metal Gear Box Substance" serial number A030307 with Black Moretec power adapter model number: PAA-0035-01;

11)   One (1) Western Digital Caviar 80GB EIDE Hard Drive, Serial No. WMA8E3421619, encased in one (1) black and silver "Metal Gear Box Substance" serial no. A066622 labeled with tape "file server." Black power adapter model 25PWR, S/N 0004358;

12)   One (1) Seagate Barracuda 7200.7 160GB Hard Drive, Model ST3160021A, Serial 3JS0NVHG, encased in "Metal Gear Box Substance" serial number A030302 labeled with tape marked "News." Black power adapter model no. 0005533;

13)   One (1) Hitachi Deskstar ATA/IDE Hard Drive, Serial Number C6CGHNZM encased in one (1) black and silver "Metal Gear Box

Substance" serial number A066444 labeled with tape "2/1." Black Moretec power adapter model no. PAA-0035-01;

14) One Dell Monitor, Model: 2000FP, Black in Color. Serial Number TW-09E249-46635-2AP-060L;

15) One (1) black and silver wireless Pre - N Router with black DC12V/2A adapter. Brand Name: Belken. Model number: F5D8230-4. Serial number BEL1IEJT;

16) One Dell Axim Pocket PC, Silver and Black in color with SD card. Docking station, power cord, and USB cable included;

17) One Toshiba Brand Pocket PC E740 Model Number: PA310U-3P05, Serial Number: 92047063L BlackPocket PC is in Black Toshiba brand;

18) One Palm, Inc Brand Pam IIIxe PDA Serial Number: B0HP1BE00963PDA in black and blue soft case;

19) One silver and gray D-Link Gigabit switch model number DGS-1008D. Serial number: DQ2L141000528. Eight (8) attached cords including one (1) black wall adapter D-Link Model #JTA0302C, light blue cord labeled "to Belkin wireless access point", one (1) black cord labeled "To DSL modem", one (1) gray cord labeled "To Belkin wireless access point" one (1) black cord labeled "TO: LYNKSYS network storage link SIN: SGA: 004600566", one (1) blue cord labeled "to Linksys workstation switch Port #1". One (1) black cord labeled "To nothing", One (1) gray cord labeled "D-Link switch";

20) One (1) Paradyne hot wire DSL modem. Model no. 6381-A1-200. Serial no. 6042892. With black power adapter DVE Model no. DV-1560S and one (1) gray telephone line;

21) One Linksys Network Storage link, black and gray, Model number: NSLU2, Serial number: SGA004701227, with power cord. Two (2)

Page 15 of 35

Associated cables marked "FROM LINKSYS NETWORK STORAGE LNK TO METAL GEAR BOX";

22)    One Compaq computer keyboard, black and gray, model 5107, serial number BD33714886;

23)    One Canon Canoscan LiDE30 flatbed scanner, grey in color. SN: VZJ503701 with associated  USB cord;

24)    One Linksys network storage link, black and grey, model number: NSLU2 Serial Number SGA004600566, Associated power cord and base.  One cable labled "to metal gear" box "news", one cable labeled "to metal gear box File Server"; and

25)    One Linksys S-Port workgroup switch, model number EG00SW, Serial number: RDU0039004019GB1400PM with associated power cord, one network cable labeled: "to nothing", one network cable labeled "to Dell XPS in living room", and one network cable labeled "to ATCS cooler master in bedroom".

The defendant further agrees that he will assist the United States in defending against any claim(s) on the above property, which might be filed by third parties in ancillary proceedings.

III.    **What the government agrees to do**

A.    In exchange for the defendant's plea of guilty to all four counts in the Indictment, the United States agrees that it will bring no further federal criminal charges against the defendant relating to child exploitation crimes committed before the date of this agreement, that were discovered during the investigation in this case.  However, if the defendant's guilty pleas are rejected, withdrawn,

vacated, reversed, or set aside, or if his sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case for which there is probable cause, including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated.

      B.     If the defendant is completely candid and truthful with both the court and the United States Probation Office in admitting his criminal conduct and he meets the criteria set out in U.S.S.G. § 3E1.1, the United States agrees to recommend the defendant for a three level downward adjustment for acceptance of responsibility. If, at any time prior to imposition of sentence, the defendant fails to meet the criteria set out in U.S.S.G. § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation.

      C.     The United States agrees not to seek any upward sentencing departures under U.S.S.G. § 2G2.2( b)(7), (*see,* Note 4(B)(i) and (ii)), or any other authority. This section does not prohibit the United States from arguing for the application of any upward guideline adjustments to the court's sentence

calculation.

IV.   **Advisement of maximum penalties and conditions of sentence**

    A.    The maximum statutory penalties for Counts 1 & 2, Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), as charged in this case against this defendant, each include the following:  (1) 20 years in prison, with a mandatory minimum term of 5 years imprisonment; (2)  a $250,000 fine; (3) a $100 mandatory special assessment; and (4)  supervised release of any term of years or life [18 U.S.C. 3583 (k)].

    B.    The maximum statutory penalties for Count 3, Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), as charged in this case against this defendant, include the following:  (1) 10 years in prison; (2)  a $250,000 fine; (3) a $100 mandatory special assessment; and (4)  supervised release of any term of years or life [18 U.S.C. 3583 (k)].

    C.    Pursuant to Comment 7 of U.S.S.G. § 5E1.2, the court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term.

    D.    Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the court imposes a fine of more than $2,500, interest will be charged on the balance

not paid within 15 days after the judgment date.

  E. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

  F. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

## V. Guideline applications and sentencing issues

  The parties acknowledge that pursuant to §1B1.11(b)(3) of the United States Sentencing Guidelines, the 2005 edition of the Guidelines manual applies. ("If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses.")

  The parties agree that the Sentencing Guidelines are advisory, and the government has set forth its estimate of the calculations below:

**GUIDELINE APPLICATIONS AND SENTENCING ISSUES**
**(the following estimates bind neither party nor the court, and use the**
**Sentencing Guidelines effective November 1, 2005)**

*SUMMARY: Counts 1 and 2*

*Base Offense Level §2G2.2(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

*Defendant's conduct limited to receipt of child sexual exploitation material, and defendant did not intend to traffic in, or distribute such material §2G2.2(b)(1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *-2*

*Involved a Prepubescent Minor §2G2.2(b)(2)* . . . . . . . . . . . . . . . *+2*

*Involved material that portrays sadistic or masochistic conduct or other depictions of violence §2G2.2(b)(4)* . . . . . . . . . . . . . . . . . . . *+4*

*Use of a computer §2G2.2(b)(6)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *+2*

*Offense involved 600 or more images §2G2.2(b)(7)(D)* . . . . . . . . *+5*

*Subtotal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *33*

*Acceptance of Responsibility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *-3*

*Non-Binding Estimated Total* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *30*

*Non-Binding Estimated Criminal History* . . . . . . . . . . . . . . . . . . . *I*

*Non-Binding Estimated Sentencing Range* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *97-121 months*

*Statutory Minimum Penalty* . . . . . . . . . . . . . . . . . . . . . . . . *5 YEARS*

*Non-Binding Estimated Fine Range* . . . . . . . . . . *$15,000-$150,000*

*SUMMARY: Count 3*

*Base Offense Level §2G2.2(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*Involved a Prepubescent Minor §2G2.2(b)(2)* . . . . . . . . . . . . . . *+2*

*Involved material that portrays sadistic or masochistic conduct or other depictions of violence §2G2.2(b)(4)* . . . . . . . . . . . . . . . . . . . *+4*

*Use of a computer §2G2.2(b)(6)* . . . . . . . . . . . . . . . . . . . . . . . . . . . *+2*

*Offense involved 600 or more images §2G2.2(b)(7)(D)* . . . . . . . . *+5*

*Subtotal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *31*

*Acceptance of Responsibility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *-3*

*Non-Binding Estimated Total* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *28*

*Non-Binding Estimated Criminal History* . . . . . . . . . . . . . . . . . . . *1*

*Non-Binding Estimated Sentencing Range* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *78-97 months*

*Non-Binding Estimated Fine Range* . . . . . . . . . . *$12,500-$125,000*

***Under § 3D1.3, these three counts are grouped together, and the highest offense level is used (i.e., level 30, sentencing range 97-121 months).***

A.      The parties agree that under 18 U.S.C. 2252(b)(1), **the statutory minimum penalty of 5 years (60 months) applies to this case**.  There may be other specific offense characteristics that affect the base offense calculation. There

Page 21 of  35

may be applicable adjustments to this base offense level, contained in Parts A, B, C, and D of Chapter Three of the United States Sentencing Commission Guidelines, that may make the final offense level higher than or lower than the offense level estimated by the United States.

The defendant understands the court may grant up to a three-level downward adjustment for acceptance of responsibility if the defendant meets the criteria set forth in U.S.S.G. § 3E1.1, and upon the United States' motion. The applicability of all adjustments to the base offense level will be set forth in the presentence report and the parties are free to argue the applicability of any and all adjustments. As stated in Part I. B. above, the defendant agrees that neither the defendant, the court, nor the government is bound by the government's estimates or conclusions of the defendant's guideline sentence range contained in this agreement.

B.    The parties have no agreement on the defendant's criminal history category. The government estimates that it will be Category I. The defendant understands that the court may find the defendant's criminal history to be higher than the United States has estimated. The defendant may argue about the appropriate criminal history calculation or classification. The United States is free

to oppose any such argument.

C.     The parties agree that neither the United States nor the defendant will seek any upward or downward sentencing departures, except as noted in section II.C. The only potential downward departure motions permitted by the terms of this agreement are a government motion for downward departure for substantial assistance, pursuant to U.S.S.G. § 5K1.1. This section does not place any limits upon any guideline adjustments.

D.     The defendant fully understands that unless the conditions set forth in Paragraph II. C. 7 above are triggered the court has total discretion to determine the ultimate sentence, and that the defendant will not be permitted to withdraw his plea or appeal his sentence if the court deviates from the sentencing estimates or recommendations made by either the United States or defense counsel.

## VI.   **Elements of the offense**

A.     In order to sustain a conviction for Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), as charged in Counts 1 and 2 of this case, the United States would have to prove beyond a reasonable doubt the following elements:

1.     the Defendant knowingly received visual depictions of minors

engaged in sexually explicit conduct;

2.      the Defendant knew the visual depictions were of minors

engaged in sexually explicit conduct;

3.      the Defendant knew that production of such visual depictions

involved the use of minors in sexually explicit conduct; and

4.      the visual depictions had been transported in interstate or

foreign commerce by means of a computer.

B.      In order to sustain a conviction for Possession of Child Pornography,

in violation of 18 U.S.C. § 2252(a)(4)(), as charged in Count 3 of this case, the

United States would have to prove beyond a reasonable doubt the following

elements:

1.      the Defendant knowingly possessed one or more computer

files which the Defendant knew contained visual depictions of

minors engaged in sexually explicit conduct;

2.      the Defendant knew the visual depictions contained in the

computer files were of minors engaged in sexually explicit

conduct;

3.      the Defendant knew that production of such visual depictions

Page 24 of  35

involved the use of minors in sexually explicit conduct; and

4.    the visual depictions had been transported in interstate or foreign commerce by means of a computer.

C.    In order to sustain forfeiture of the Antec Midtower Silver-Cased Computer with DVD and CDR R/W drives, Labeled with Windows XP Product Key: HC3VC-28YDG- RRBRX-4BJJJ-DCDJG; the United States would have to prove beyond a reasonable doubt that it was used to commit Count 3 of the Indictment.

## VII.  **Factual Basis for the Plea**

The government and the defendant stipulate that the following facts are true and correct, and would be proven at a trial by the United States:

On 17 November 2005, Senior Airman David R. Losser, Elmendorf AFB, reported to Special Agent (SA) Haseldon, Air Force Office of Special Investigations (OSI), that he found child pornography while doing a private search of his co-worker's (William J. Eaton's) Antec Midtower Silver-Cased Computer with DVD and CDR R/W drives, Labeled with Windows XP Product Key: HC3VC-28YDG- RRBRX-4BJJJ-DCDJG.  Eaton had asked Losser to make periodic checks of Eaton's apartment at 6029 Debarr Road, Anchorage, AK, while

Page 25 of  35

Eaton was deployed to Qatar. Eaton was an active duty member of the Air Force, stationed at Elmendorf Air Force Base.

The next day, 11/18/05, pursuant to a federal search warrant, law enforcement agents searched Eaton's apartment at 6029 Debarr Road, Anchorage, AK, and found a number of computers, and an extensive computer network. Connected to the network were three (3) tower computers and four external hard drives. The "main" computer was a Dell XPS. The computer housed three (3) 500GB hard drives. The entire network had a storage capacity of over two (2) terabytes (2 trillion), and contained three separate encryption programs.

Before Eaton was returned from his out of country deployment on 11/30/05, additional searches were also conducted in his personal and work quarters in Qatar, pursuant to military search authorities. Those searches resulted in seizures of additional computer equipment that Eaton had been using to remotely access his computers in his apartment at 6029 Debarr Road, Anchorage, AK.

Senior Special Agent Kevin Laws, Immigration and Customs Enforcement (ICE), is a computer forensic expert who examined all of the above-described computers, hardware and software. SSA Laws' analyses revealed evidence that beginning at a time unknown, but at least by on or about April 24, 2004, and up to

Page 26 of 35

on or about November 16, 2005, in the District of Alaska, the defendant

WILLIAM JOSEPH EATON,  did knowingly receive visual depictions with file

names including,

- Eaton XPS\Slave on XPS\C\pics\O\pool-boys-01-033.jpg,

- Eaton XPS\Slave on XPS\C\pics\O\pool-boys-01-117.jpg,

- Eaton XPS\Slave on XPS\C\pics\O\pool-boys-01-129.jpg,

- Eaton XPS\Slave on XPS\C\pics\O\pool-boys-01-091.jpg,

that had been mailed, shipped, and transported in interstate and foreign commerce,

and the producing of those visual depictions involved the use of minors engaging

in sexually explicit conduct, as defined in Title 18, United States Code, Section

2256(2), and those visual depictions were of such conduct.

SSA Laws found further evidence that beginning at a time unknown, but at

least by on or about April 24, 2004, and up to on or about November 16, 2005, in

the District of Alaska,  the defendant WILLIAM JOSEPH EATON,  did

knowingly receive visual depictions with file names including,

- Eaton XPS\Slave on XPS\C\girl\pics\lsm-01-029.jpg,

- Eaton XPS\Slave on XPS\C\girl\pics\lsm-01-030.jpg,

- Eaton XPS\Slave on XPS\C\girl\pics\lsm-01-032.jpg,

- Eaton XPS\Slave on XPS\C\girl\pics\lsm-01-033.jpg,

that had been mailed, shipped, and transported in interstate and foreign commerce,

and the producing of those visual depictions involved the use of minors engaging

in sexually explicit conduct, as defined in Title 18, United States Code, Section

2256(2), and those visual depictions were of such conduct.

SSA Laws further found evidence that beginning at a time unknown, but at

least by on or about July 30, 2005, and up to on or about November 16, 2005, in

the District of Alaska, and elsewhere, the defendant WILLIAM JOSEPH EATON,

did knowingly possess one or more computer files contained in an Antec

midtower silver-cased computer labeled with  Windows XP product key:

HC3VC-28YDG- RRBRX- 4BJJJ-DCDJG, which contained still-picture visual

depictions, and movie visual depictions, that had been mailed, shipped, and

transported in interstate and foreign commerce, and the producing of those visual

depictions involved the use of minors engaging in sexually explicit conduct, as

defined in Title 18, United States Code, Section 2256(2), and those visual

depictions were of such conduct.

All tolled, SSA Laws found over 6,000 still images and over 400 movies,

visually depicting minors engaging in sexually explicit conduct, stored in the

Page 28 of  35

VIII.  **Adequacy of the agreement**

Pursuant to Local Criminal Rule 11.2 (D)(8), this plea agreement is appropriate in that it applies the same sentencing guideline provisions that would otherwise be applicable to the defendant's sentence if he had gone to trial and had been convicted on all counts in the charging instrument.  The sentence to be imposed under the terms of this plea agreement will serve to adequately protect the public and reaffirm societal norms, provide for deterrence to the defendant and others, and provide an opportunity for the defendant to rehabilitate himself.

IX.  **Defendant's agreement and understanding of the terms of this plea agreement**

I, WILLIAM JOSEPH EATON , being of sound mind and under no compulsion or threats, or promises not otherwise contained in this document, knowing that I will be put under oath at my change of plea hearing to tell the truth,

Page 29 of 35

do hereby state my agreement to and understanding of this plea agreement as follows:

A.      I wish to enter a plea of guilty to Counts 1 through 4, of the Indictment filed in this case, which charges me with two counts of Receipt of Child Pornography (Counts 1&2), in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of Possession of Child Pornography (Count 3), in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2); and Criminal Forfeiture (Count 4), in violation of 18 U.S.C. § 2253(a)(3).

B.      My attorney has explained the charge(s) to which I am pleading guilty and the necessary elements, and the consequences of my plea.

C.      I am admitting that the allegations against me in Counts 1 through 4 of the Indictment filed in this case, and the factual bases for my pleas, are true.

D.      I understand that by pleading guilty I give up and I agree to waive the following rights:

--      The right to plead not guilty or to persist in that plea if it has already been made;

--      The right to a speedy and public trial by a jury on the issues of my guilt and the forfeitability of my interest in the Forfeiture Assets;

--      The right to object to the composition of the grand or petit jury;

--      The right to be presumed innocent and not to suffer any criminal

penalty unless and until my guilt is established beyond a reasonable

doubt;

--      The right to be represented by a lawyer at trial and if necessary to

have a lawyer appointed to represent me at trial -- I understand I am

not waiving my right to have counsel continue to represent me during

the sentencing phase of my case;

--      The right to confront and cross examine witnesses against me,

and the right to subpoena witnesses to appear in my behalf;

--      The right to remain silent at trial, with such silence not to be

used against me, and the right to testify in my own behalf;

--      The right to contest the validity of any searches conducted on my

property or person.

E.      I am fully aware that if I were convicted after a trial and sentence

were imposed on me thereafter, I would have the right to appeal any aspect of my

conviction and sentence. Knowing this, I voluntarily waive my right to appeal my

conviction. Furthermore, I also knowingly and voluntarily agree to waive my

right under 18 U.S.C. § 3742 to appeal any aspect of the sentence imposed in this

case – including any forfeiture or conditions of supervised release – if the court

Page 31 of 35

accepts this agreement and imposes a sentence no greater than the statutory maximums available for these offenses. Furthermore, I knowingly and voluntarily waive my right to collaterally attack any aspect of my conviction or sentence, except for a challenge based upon ineffective assistance of counsel -- based on information not now known by me and which, in the exercise of due diligence, could not be known by me by the time the court imposes the sentence --which affected either my guilty plea or the sentence imposed by the court. I am fully satisfied with the representation given me by my attorney. We have discussed all possible defenses to the charges in the Indictment. My attorney has explained the legal and factual issues involved in my case to my satisfaction. We have discussed how my sentence will be calculated under the United States Sentencing Commission Guidelines as well as the statutes applicable to my offense and any other factor that will affect the sentence calculation in my case. We have also discussed the sentencing estimates prepared by the government contained in this agreement and I understand they are not binding on any party.   F.     I further understand that if I plead guilty, there will not be a trial and that the court will ask me under an oath to answer questions about this offense. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

G.     I understand that I have a right to plead not guilty and that no one can force me to plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the judge when I stand before him to enter my plea.

H.     I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the court may impose if I plead guilty. I understand that the discussions between my attorney and me concerning my sentence exposure or the actual sentence the court might impose are only estimates and do not bind the court. I understand that the court has the ultimate discretion to determine the sentence to be imposed in my case. I understand the United States has not guaranteed me a motion for a substantial assistance departure and the court is not bound to grant such a motion if the government files one. Unless specifically set forth in this agreement in Paragraph I. B. above, I understand that if the court deviates from the sentencing recommendations made by either the United States or my attorney, I cannot withdraw my guilty plea from this agreement, and that I am waiving my right to appeal the court's sentencing decision.

I.     I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission.

Page 33 of  35

J.    This document contains all of the agreements made between me, my attorney, and the attorney for the United States regarding my plea. There are no other promises, assurances, or agreements between me, my attorney, and the United States that have affected my decision to change my plea or to enter into this agreement. If there were, I would so inform the court. I understand that if I breach this agreement in any way the United States will be free to prosecute me on all charges for which there is probable cause, arising out of the investigation of this case, and to reinstate any charges dismissed pursuant to this agreement.

K.    I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the court should find me incompetent to enter into this agreement or to enter my plea. I understand the consequences of my guilty plea. I understand that I will lose my right to own or possess any firearms, my right to vote, and my right to sit on a jury. I enter into this agreement knowingly and voluntarily. I therefore wish to enter pleas of guilty to two counts of Receipt of Child Pornography, one count of Possession of Child Pornography, and Criminal Forfeiture.

DATED: 16 March 2006          _____
                              **WILLIAM JOSEPH EATON**
                              Defendant

As counsel for the defendant, I have discussed with him the terms of this plea agreement, have fully explained the charge(s) to which he is pleading guilty and the necessary elements, all possible defenses, and the consequences of his plea. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering pleas of guilty. I know of no reason to question his competency to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.


DATED: _03/16/06_          _____
                           ALLAN BEISWENGER, Attorney
                           for WILLIAM JOSEPH EATON


On behalf of the United States, the following accept WILLIAM JOSEPH EATON 's offer to plead guilty under the terms of this plea agreement.

DATED: _3/17/06_           _____
                           AUDREY J. RENSCHEN
                           Assistant U.S. Attorney


DATED: _3/17/06_           _____
                           DEBORAH SMITH
                           Acting United States Attorney


Page 35 of 35