IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WILLIAM J. EATON | ) |
| | ) |
| Defendant. | ) |

Case No. A05-243-MJ(JDR)

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the Defendant, William Joseph Eaton, by and through his attorney, Allan Beiswenger, and files his sentencing memorandum and factors in consideration of his sentence.

Mr. Eaton entered into a plea agreement with the United States Government (Docket No. 20), and entered a plea of guilty on March 20, 2006, to two counts (Counts 1 and 2) of Receipt of Child Pornography in violation of 18 U.S.C. Sec. 2252(a)(2) and (b)(1); one count of Possession of Child Pornography (Count 3) in violation of 18 U.S.C. Sec. 2252(a)(4)(b) and (b)(2), and Criminal Forfeiture (Count 4) in violation of 18 U.S.C. Sec. 2253(a)(3). The terms of the plea agreement included the agreement of the United States Government not to file any additional charges, nor file any motions for upward departures, and to recommend a guideline adjustment for acceptance of responsibility. Mr. Eaton agreed not to seek any downward departures under the Sentencing Guidelines, and he agreed to waive any appellate rights of his

Allan Beiswenger
Attorney at Law
1101 W 7th Ave.
Anchorage, AK 99501
(907) 868-1280
Fax (907) 258-6419

conviction, and of his sentence.  Under the terms of the plea agreement, Mr. Eaton is free to argue for a sentence below the guideline range in accordance with the sentencing factors set forth in 18 U.S.C. Sec. 3533(a).

The decision in *United States v. Booker,* 125 S.Ct. 735(2005) holds that the Federal Sentencing Guidelines are advisory.  In the recent Ninth Circuit Court of Appeals decision in *Zavala v. United States*[1] the court held that District Courts may consider the guideline range as a "starting point" but that they should not be accorded undue weight. District Courts ". . . must properly use the Guideline calculation as advisory and start there, but they must not accord it greater weight than they accord the other Sec. 3553(a) factors.  Rather, they must consider all of the information before them, as they used to do, and then reach for the correct sentence under all the circumstances."[2]

The relevant factors set forth in 18 U.S.C. Sec 3553(a) for sentencing are:

(A)   Factors to be considered in imposing a sentence.  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – –

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] 443 F.3d 1165, 1171 (9th Cir. 2006).
[2] *Id.*

        (2)    the need for the sentence imposed –

            (a)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

            (b)    to afford adequate deterrence to criminal conduct;

            (c)    to protect the public from further crimes of the defendant; and

            (d)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

        (3)    the kinds of sentences available;

        (4)    the kinds of sentence and the sentencing range established for – –

            (a)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines – –

                (i)    issued by the Sentencing Commission pursuant to <u>section 994(a)(1) of title 28, United States Code</u>, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

                (ii)    that, except as provided in section 3742(g) [<u>18 USCS § 3742(g)</u>], are in effect on the date the defendant is sentenced; or

    (b) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to <u>section 994(a) (3) of title 28, United States Code</u>, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

    (5) any pertinent policy statement – –

    (a) issued by the Sentencing Commission pursuant to <u>section 994(a) (2) of title 28, United States Code</u>, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (b) that, except as provided in section 3742(g) [<u>18 USCS § 3742(g)</u>], is in effect on the date the defendant is sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

See also *Booker,* 125 S.Ct. at 764.

    The various factors provide a common sense approach to protect society, reaffirm societal norms, provide treatment for a defendant, and bring respect for the process. In the present case, the Court is faced with competing concerns, as the

conduct engaged in by Mr. Eaton is to be condemned given the exploitation of the minors whose images were possessed by Mr. Eaton, and the number of images possessed. But Mr. Eaton is an individual who has been exemplary all other respects of his life, and has honorably served his country in the military for over ten years. He has never exploited minors in any way other than the collection and viewing of child pornography. When all of the sentencing factors are considered, it is clear that the mandated minimum sentence of five (5) years is more than sufficient to comply with the purposes of sentencing.

### ARGUMENT

1. Guideline Range

Mr. Eaton does not contest the applicable Guideline calculation as set forth in the Presentence Report. His Base Offense level is 22. He never manufactured, distributed, or was otherwise in any way involved in the production or facilitation of any type of distribution of pornography, and is entitled to a two level reduction. Some of the images possessed by Mr. Eaton did depict prepubescent minors (two level upward adjustment), and a very small percentage portrayed sadistic or masochistic conduct (four level upward adjustment). The number of images did exceed 600 (five level upward adjustment), and were possessed by Mr. Eaton on his computer (two level adjustment). Thus, his adjusted offense level would be 33.

Mr. Eaton has demonstrated an acceptance of responsibility for his offense, and is entitled to a three level reduction, reducing it to 30. As he has no

criminal history points, his criminal history category would be I. The guideline imprisonment range would therefore be 97 to 121 months.

2. Nature and Circumstances of the Offense

Child pornography has been harshly condemned by Congress, and by the Guidelines Commission. There have been a number of Amendments to the applicable Sentencing Guideline (Section 2G2.2). The mandatory minimum sentence (five years) for Mr. Eaton's offenses reflect such condemnation. While the offenses deserves condemnation given the harm caused to the children whose images are possessed and distributed, some of the rationale used to justify such harsh treatment does not apply to Mr. Eaton.

Mr. Eaton "collected" images, most of which were automatically downloaded from various "newsgroup" sites, and were automatically placed into files set up on his computer. The number of images possessed by Mr. Eaton is more representative of his computer expertise than it is of any "obsession" on his part. Mr. Eaton's "life", from all respects, was his career in the military. He has received extremely positive reviews from his supervisors, and his productivity and dedication in the military all required him to devote significantly more time and energy to his position than what was minimally required. He has no family that he is close to, other than his step-father, and only a few friends, and so he did little socialization. Again, his military career was his life.

Mr. Eaton has been deployed to various locations around the world, including Japan (1998-2001); Kuwait (2003); Korea (2004) and Qutar (2005).

At no time did he take any pornography with him, nor did he continue to collect any images, other than automatic downloads that occurred during his deployment in 2005 to Qutar. He never viewed nor possessed pornography while on duty. He never produced any images. Mr. Eaton never distributed any images, nor otherwise shared any pornography with others. Mr. Eaton never purchased pornography, nor did he otherwise "encourage" individuals that posted the images, through any type of acknowledgement. Mr. Eaton has never been involved in chat rooms with minors, or other individuals who possess child pornography. Mr. Eaton has never made any overt acts towards any minors, or in any way encouraged or facilitated the creation or distribution of child pornography.

In other words, Mr. Eaton's possession of child pornography could not be any more "passive".

The manner in which Mr. Eaton obtained child pornography created no type of demand. The images were made available on a "posterboard" for anyone to access and download. Since they were not on a specific web-site, any person posting the images would have no way of knowing how many individuals had accessed the posterboard. The assumption that individuals are encouraged to make available for distribution child pornographic images given a "demand" is erroneous given the manner in which Mr. Eaton obtained his images, as the person or entity that posted them has no way of knowing whether others had accessed the material posted. Thus, Mr. Eaton created no sort of "demand", nor did he in any way encourage any sort of distribution through "thank yous" or other acknowledgments.

Many of the Congressional Findings regarding Pub. L 108-21 and 104-208, do not apply to Mr. Eaton. "[T]he production of child pornography is a byproduct of, and not the primary reason for, the sexual abuse of children". Pub. L. 108-21 (12). Mr. Eaton did not use child pornography to seduce children [Pub. L. 104-208, (3)] nor as a model for sexually "acting out" (4).

The Guideline range for Mr. Eaton adds 4 points because he not only "possessed" images, but received them. Sentencing Guideline Sec. 2G2.2(a). There is very little distinction.[3]. Another two (2) points are added because he used a computer. Sec. 2G2.2(6). Yet use of a computer makes the receipt, and possession, far more passive, as no "person to person" exchange occurs, nor is there any purchase from a business or individual which would create a demand. Mr. Eaton also received an upward adjustment as some of the images portrayed "sadistic or masochistic conduct", yet less than one percent of the still images, or movies that were possessed depicted such conduct[4]. Obviously such depictions were not a "primary" focus of Mr. Eaton's collection. Though the number of images and movies possessed was large, there were many duplicates, as Mr. Eaton transferred them from one computer to another, without erasing them from the first computer.

---

[3] In *United States v. Myers,* 355 F.3d 1040, 1042-43 (7th Cir. 2004), the Court noted the reasons for treating "receipt" and "possession" differently, as the receipt of child pornography by a person creates or strengthens the market for such material, and ". . . keeps producers and distributors of this filth in business".[quoting from *United States v. Grosenheider,* 200 F.3d 321, 332-33 (5th Cir. 2000)]. But in Mr. Eaton's case, there was nothing of value exchanged, nor even an acknowledgement, and no "market" of any nature was created or strengthened. A Sentencing Court can consider that an offense could have been charged differently, with a lower Guideline Range, in order to avoid a disparity in sentences. *United States v.Carey,* 638 F. Supp. 2d 891, 894 (E.D. Wisc. 2005).

[4] According to the investigative report, 63 of the total of 6759 still images reflected "bondage", and 5 of the 539 movies included bondage.

Given the above, the Guidelines range overstates Mr. Eaton's conduct.

3. The Characteristics of the Offender

Mr. Eaton is 30 years old, and grew up in Florida. He had little contact with his biological father after the age of five, but developed a close relationship with his step-father, Roberts Stevens. He graduated from high school in Miami. He attended a community college in Miami for approximately one year, and enlisted in the United States Air Force. Mr. Eaton's mother passed away in 1996, the victim of an unsolved homicide.

Mr. Eaton's primary hobby has been to work with computers, and since he has been in the Air Force, his responsibilities have also involved computer technology. He held a security clearance, and helped to organize or create many network files and applications.

Mr. Eaton's military service can be considered by the Court as part of his "characteristics".[5] The Court can also consider his family circumstances.

Mr. Eaton was willing to cooperate with the Government in addition to his "acceptance of responsibility", and attempted to offer substantial assistance. But the information that he could provide was extremely limited, as he never dealt with an actual individual or entity. All of his actions in terms of obtaining child pornography were done through the computer, from newsgroup sites. While he

---

[5] Although such service may not qualify for a downward departure under the guidelines [See U.S.S.G. Section 5H1.1, and *United States v. Neil,* 903 F.2d 564, 566 (8th Cir. 1990)], it may be considered a mitigating factor under *Booker.*

offered to provide suggestions in terms of how to locate and identify individuals responsible for posting the images to the newsgroup sites, the Government declined his assistance.

Though Mr. Eaton may not qualify for a "substantial assistance" departure under U.S.S.G. Sec. 5K1.1, his willingness to assist the Government can be considered under 18 U.S.C. Sec. 3553(a)(1). He also agreed to forfeit thousands of dollars worth of computer and electronic equipment including a Plasma television.[6]

A psychological evaluation completed by Dr. Bruce Smith of Mr. Eaton is attached. As can be seen from Dr. Smith's evaluation, Mr. Eaton is homosexual, but given the criticism and rejection of that orientation that he feared from family and the military, he has kept it secret. His "outlet" consisted of viewing child pornography. There is no indication that Mr. Eaton has ever acted out any sort of sexual fantasy, or otherwise engaged in any sort of relationship with minors.[7] As Dr. Smith stated in his recommendations, "There is nothing in the current testing to suggest that Joseph has crossed the line from fantasy and viewing child pornography".[8] Nor is there any other evidence that indicates that Mr. Eaton has ever acted inappropriately with a minor.

Dr. Smith believes that Mr. Eaton should receive treatment, and it is requested that the Court recommend placement at the Butner Federal Prison in

---

[6] See Plea Agreement, p. 13-16.
[7] Mr. Eaton's mental status can be considered post-*Booker* as one of the circumstances of the offender and of the offense, as it reflects on a "significantly reduced mental capacity" affecting his inability to control his behavior, even if it does not rise to the level of "diminished capacity". *United States v. Thompson,* 315 F.3d 1071, 1976 (9th Cir., 2002).
[8] Evaluation, at p. 9.

DEFENDANT'S SENTENCING MEMORANDUM                             CASE NO. A05-243-MJ(JDR)
USA v. W.E.                                                                    Page 10 of 13

North Carolina, and entry into its sex offender program. As his evaluation indicates, "Joseph acknowledges responsibility which indicates amenability to treatment".[9] Further, "With treatment, Joseph appears quite capable of applying sexual reconditioning techniques to his deviant fantasies."[10] It is important for Mr. Eaton to be able to receive treatment, as he is motivated. It would be important for him to receive treatment as soon as possible given his motivation, and it would be inconsistent with his rehabilitation to remain in prison for several years before receiving treatment.[11]

**CONCLUSION**

It is difficult to "identify" with someone who possesses child pornography, as most people would find the images abhorrent and automatically dismiss an individual who views and collects such material. But not all people who view or collect child pornography are dangerous offenders who present a risk of molesting children.

As is clear from his psychological evaluation, Mr. Eaton is not an individual with high self-esteem who maintained a large number of friends. Rather, he chose to isolate himself because of his perceived deficiencies, and later because of his homosexuality. His "world" consisted of his computer, and that is where he turned to fill his sexual desires. He did not seek out children, or in any way seek to seduce them

---

[9] Evaluation, at p. 8.
[10] Evaluation, at p. 9.
[11] In *United States v.Thompson, supra,* 315 F.3d at 1076-77, the Court held that the consideration of potential for rehabilitation, and the delay in obtaining treatment, would not justify a "heartland" departure. But post-*Booker*, it is a valid factor to be considered under 18 U.S.C. 3553(a)(A)(2)(d).

in "chat rooms". He did not seek out distributors of pornography in order to purchase images. And despite his computer skills, he never sought to distribute or otherwise encourage any distribution.

Mr. Eaton's life will obviously never be the same. He will no longer be able to pursue a career in the military. The use of computers, which provided him with both entertainment and his livelihood, will be prohibited for a significant period of time. He will be subject to whatever sex offender registration requirements might exist in the area where he lives once he is released from prison, and his employment options will be quite limited.

While child pornography deserves societal condemnation, such condemnation is more than adequately met though imposition of the mandatory sentence in this case of five years. Mr. Eaton has not "crossed the line" and given the circumstances and manner in which he received the images, he neither encouraged nor promoted the manufacture or distribution of pornography. Being attracted to child pornography is deviant behavior, but there was no harm caused by Mr. Eaton's behavior beyond the rationale used by Congress—that each time an image is distributed it again victimizes the child/individual in the image.

Mr. Eaton has admitted his conduct, has attempted to assist the Government, has been honest throughout, and has accepted responsibility for his conduct. His prospects for rehabilitation are good. It makes no sense to incarcerate him beyond the mandatory minimum term.

It is requested that the Court sentence Mr. Eaton to a term of imprisonment no longer than necessary, and impose a sentence of five years.

DATED: 22 May 2006

LAW OFFICES OF
ALLAN BEISWENGER
Attorney for Petitioner

s/ Allan Beiswenger
1101 W 7th Avenue
Anchorage, AK  99501
Phone: (907) 868-1280
Fax: (907) 258-6419
E-mail: beiswenger@ak.net
Alaska Bar No. 7706074

**CERTIFICATE OF SERVICE**
I hereby certify that on 22 May 2006, a copy of the foregoing **SENTENCING MEMORANDUM** was served electronically on Audrey J. Renschen, U.S. Attorney.

s/Allan Beiswenger